**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MATTHEW STONE, an individual,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>FIRST CREDIT SERVICES INC, a New York Corporation; FIGHT FOR FITNESS LLC, a Georgia Limited Liability Company; FIGHT FOR FITNESS NORTH LLC, a Georgia Limited Liability Company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut company,<br><br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No.:**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**AMENDED COMPLAINT[1]**

COMES NOW Matthew Stone, Plaintiff, and states the following Complaint against Defendant FIRST CREDIT SERVICES INC for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, and violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*; against Defendants FIRST CREDIT SERVICES INC, FIGHT FOR FITNESS LLC, and FIGHT FOR

---

[1] Amended as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(A).

FITNESS NORTH LLC, for violations of Georgia's Fair Business Practices Act (FBPA), O.C.G.A. §§ 10-1-390 *et seq.*; and Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA as surety for the actions of Defendant FIRST CREDIT SERVICES INC in violation of the FDCPA, the FCRA, and Georgia's FBPA per the terms of a surety bond.

## JURISDICTION AND VENUE

1.     This action arises out of Defendant FIRST CREDIT SERVICES INC's illegal and improper efforts to collect a consumer debt, and includes violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA"), violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*; and Georgia's Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.* ("FBPA"); and Plaintiff's claims under these statutes are so related that they form the same case or controversy.

2.     Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k, 15 U.S.C. §§ 1681 *et seq.*, and 28 U.S.C. §§ 1331 & 1337, as well as 28 U.S.C. § 1367 (Supplemental Jurisdiction).

3.     This Court has personal jurisdiction over the Defendants for the purposes of this action because Defendant FIRST CREDIT SERVICES INC is a New

York Corporation that regularly attempts to collect debts from residents of
Georgia in the State of Georgia, each Defendant transacts business in the
State of Georgia, the committed acts that form the basis for this suit occurred
within the State of Georgia, Defendant FIRST CREDIT SERVICES INC
targeted Plaintiff, a Georgia resident, in the State of Georgia, Defendants
FIGHT FOR FITNESS LLC and FIGHT FOR FITNESS NORTH LLC are
Georgia limited liability companies, and each Defendant has a registered
agents in the State of Georgia.

4.   Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. §
1391 because Defendants have registered agents located within this District,
and Plaintiff is a resident of this District.

<u>PARTIES</u>

5.   FIRST CREDIT SERVICES INC is a New York Corporation registered to
do business in the State of Georgia with a registered agent named
Corporation Service Company located at 2 SUN COURT, SUITE 400,
PEACHTREE CORNERS, GA, 30092.

6.   TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
("TRAVELERS"), as surety for Defendant FIRST CREDIT SERVICES

INC, is liable for the acts of Defendant FIRST CREDIT SERVICES INC

pursuant to a surety bonds, Bond Number 7752151205 MN (attached hereto

as **Exhibit A**), that grants Plaintiff a right of action on the bond for the

injuries Plaintiff sustained as a result of Defendant FIRST CREDIT

SERVICES INC's violations of the FDCPA and other consumer protection

laws.

7.     TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA is

a Connecticut company that, upon information and belief, regularly transacts

business within the State of Georgia, and who has a registered agent in

Gwinnett County, Georgia.

8.     FIGHT FOR FITNESS LLC is a Georgia Limited Liability Company with a

registered agent named Christopher Wilson located at 4540 Roswell Rd.,

Suite 1, Sandy Springs, GA, 30342.

9.     FIGHT FOR FITNESS NORTH LLC is a Georgia Limited Liability

Company with a registered agent named Christopher Wilson located at 4540

Roswell Rd., Suite 1, Sandy Springs, GA, 30342.

FACTUAL ALLEGATIONS

10.   Mr. Stone is a natural person, and is not a corporation, limited liability

company, or other legal entity.

11.   Defendant First Credit Services Inc is a debt collector according to its

website.[2]

12.   Defendant First Credit Services Inc is registered as a collection agency with

the Minnesota Department of Commerce.

13.   Defendant First Credit Services Inc is licensed in Florida as a consumer

collection agency with license number CCA0900654.

14.   In short, Defendant First Credit Services Inc is a debt collector.

15.   Defendant First Credit Services Inc regularly attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another using the

instrumentalities of interstate commerce, including the mails and the

interstate telephone system.

---

[2] "First Credit Services is a BPO company and a digital debt collection agency that specializes in First-Party and Third-Party collections, and Customer Service Outsourcing. Utilizing our flexible OmniExp platform we can tailor our consumer engagements to meet most business needs." Leading Debt Collection agency in USA - First and Third Party Collections, FIRST CREDIT SERVICES INC, *available at* (https://www.firstcreditonline.com/) (last accessed April 25, 2022).

16.    The principal purpose of Defendant First Credit Services Inc's business is the collection of any debts using the instrumentalities of interstate commerce, including the mails and the interstate telephone system.

17.    Defendant First Credit Services also furnishes information regarding consumers' debts to consumer reporting agencies.  As a furnisher of consumer information to consumer reporting agencies, Defendant First Credit Services is obligated to comply with the Fair Credit Reporting Act (the "FCRA").

18.    Defendant TRAVELERS is surety for the actions of its principal, Defendant First Credit Services Inc, pursuant to a surety bond, Bond Number 7752151205 MN (attached hereto as **Exhibit A**).

19.    The Bond is for the benefit of "all persons suffering damages by reason of Principal's failure to comply with . . . legal obligations arising out of Principal's conduct as a collection agency."  **Exhibit A**.

20.    The Bond is not limited by geographic bounds as to where the conduct of the principal, here First Credit Services Inc, occurred or where the injured, here the Plaintiff, resides.  **Exhibit A**.

21. The Bond creates an independent cause of action available to any person damaged as a result of First Credit Services Inc's violations of its obligations arising out of its conduct as a collection agency.  **Exhibit A**.

22. Defendant TRAVELERS, as surety for Defendant First Credit Services Inc, is liable for the actions of its principal— First Credit Services Inc —up to the total amount of the bond.

23. ABC FITNESS is the successor in interest of ABC Financial Solutions LLC.

24. Upon information and belief, ABC Financial Services Inc was merged into ABC Fitness Solutions LLC, has ceased to exist, and ABC Fitness Solutions LLC has acquired all interest, assets, and liabilities of ABC Financial Services Inc as a result of this merger.

25. ABC FITNESS, and its predecessor ABC Financial Services Inc, provide gym membership account billing backend services to numerous gyms across the nation, including many within the State of Georgia.

26. Mr. Stone had a gym membership account with a gym doing business as Knuckle Up Fitness.

27. Knuckle Up Fitness is an establishment that provides, as one of its primary purposes, services or facilities which are purported to assist patrons to

improve their physical condition or appearance through changes in weight, weight control, treatment, or exercise.

28. Two different LLCs claim to do business as Knuckle Up Fitness—Defendants Fight For Fitness LLC and Fight For Fitness North LLC.

29. These two companies appear to be owned by the same individual or individuals.

30. However, Mr. Stone's health spa gym membership was with Fight For Fitness North LLC, doing business as Knuckle Up Fitness.

31. Mr. Stone executed what was purported to be a "Martial Arts Student Agreement" dated September 12, 2018, with Fight For Fitness North LLC.

32. This alleged "Martial Arts Student Agreement" is a deliberate and intentional attempt to avoid the requirements for all gyms in Georgia, which are considered health spas under Georgia law, to comply with O.C.G.A. § 10-1-393.2.

33. In fact, this purported "Martial Arts Student Agreement" includes the language "FURTHERMORE, STUDENT ACKNOWLEDGES BY HIS/HER SIGNATURE BELOW THAT HE/SHE IS ENTERING INTO A CONTRACT WITH A MARTIAL ARTS INSTRUCTION FACILITY,

AND NOT A "HEALTH SPA" AS CONTEMPLATED BY O.C.G.A. § 10-1-393.2 et seq."

34. However, a company such as Knuckle Up Fitness cannot contract around the requirements of O.C.G.A. § 10-1-393.2 with a Georgia consumer.

35. In fact, the purported "Martial Arts Student Agreement" includes additional language that makes it clear the purported agreement was for more than "martial arts training," but also for the use of facilities and equipment for exercise, including the following language: "THE USE OF WEIGHTS AND THE USE OF ANY AND ALL MACHINERY, EQUIPMENT, AND APPARATUS DESIGNED FOR TRAINING SHALL BE AT THE STUDENT'S SOLE RISK. STUDENT UNDERSTANDS THAT THE DECISION TO USE EQUIPMENT AND/OR PARTICIPATE IN TRAINING PROGRAMS SHALL BE SOLELY STUDENT'S RESPONSIBILITY. THE STUDENT UNDERSTANDS THAT PARTICIPATION IN ANY CONTACT SPORT INCLUDING, BUT NOT LIMITED TO, EXERCISE TRAINING, WEIGHT LIFTING, KICKBOXING AND OTHER FORMS OF MARTIAL ARTS, HAS CERTAIN INHERENT RISKS, AND STUDENT HEREBY AGREES

AND UNDERSTANDS THAT THEY ARE ASSUMING SUCH RISKS

VOLUNTARILY AND KNOWINGLY."

36.    The purported "Martial Arts Student Agreement" also identifies Knuckle Up

Fitness as a Health Spa under Georgia law in the following contract

language: "State law requires that we inform you that should you (the

Buyer) choose to pay for any part of this agreement in advance, be aware

that you are paying for future services and may be risking loss of your

money in the event this health spa ceases to conduct business. Health spas

do not post a bond, and there may be no other protections provided to you

should you choose to pay in advance."

37.    In a letter dated February 12, 2020, Christopher Wilson, the CEO and owner

of Knuckle Up Fitness, was expressly told that by the Georgia Attorney

General's Office that, upon the Attorney General's investigation, Knuckle

Up Fitness was indeed a "health spa" that was required to comply with

O.C.G.A. § 10-1-393.2's contract requirements.

38.    In short, prior to Mr. Stone requesting cancellation of his gym membership,

Knuckle Up Fitness had actual knowledge that its gym membership contract

failed to comply with Georgia law, specifically O.C.G.A. § 10-1-393.2, and

was therefore unenforceable as a matter of law.

39. Knuckle Up Fitness's gym membership contract violated the requirements of O.C.G.A. § 10-1-393.2 in multiple ways, but in two specific ways important to Mr. Stone.

40. Knuckle Up Fitness's gym membership contract intentionally sought to avoid the requirements of O.C.G.A. § 10-1-393.2 by calling itself not a gym membership, but also seeking to disclaim O.C.G.A. § 10-1-393.2 within the contract.

41. Knuckle Up Fitness's gym membership with Mr. Stone also included an indefinite term of membership, which violates O.C.G.A. § 10-1-393.2(b)'s prohibition of terms in excess of 36 months.

42. During 2020, Knuckle Up Fitness closed as a result of the COVID-19 pandemic.

43. Knuckle Up Fitness ceased providing services to its members, including Mr. Stone, during this time.

44. Knuckle Up Fitness ceased billing Mr. Stone during this time.

45. Mr. Stone was not offered an alternative location by Knuckle Up Fitness within 10 miles of any Knuckle Up Fitness location during the time Knuckle Up Fitness ceased operations.

46.     Mr. Stone did not use any services from Knuckle Up Fitness from the point
        they ceased providing services during the pandemic, up to the present.

47.     On or about July 12, 2020, Knuckle Up Fitness began billing Mr. Stone for
        use of its facilities again through its billing agent, ABC Financial Services
        Inc.

48.     Upon information and belief, ABC Financial Services Inc is now ABC
        Fitness Solutions LLC, a successor-in-interest entity.

49.     Upon information and belief, Mr. Stone received no notification from
        Knuckle Up Fitness that they would restart their billing.

50.     Mr. Stone did not authorize Knuckle Up Fitness to restart his billing.

51.     Mr. Stone did not authorize ABC Financial Services Inc to restart his billing.

52.     Mr. Stone did not authorize ABC Fitness Solutions LLC to restart his
        billing.

53.     From July 2020, to October 2020, ABC Financial Solutions Inc issued a
        total of four charges of $109.00 each, for a total of $436.00 in unauthorized
        charges, on Mr. Stone's credit card on file.

54.     Mr. Stone did not visit a Knuckle Up Fitness gym location in from July of
        2020 through October of 2020.

55.   Between the October 2020 charge and the November 2020 dues payment, Mr. Stone's credit card was cancelled and changed as a result of fraud.

56.   The November 2020 dues payment ABC Financial Services Inc tried to charge on Mr. Stone's credit card was declined.

57.   The November 2020 dues Knuckle Up Fitness claimed Mr. Stone owed was $109.00.

58.   The December 2020 dues Knuckle Up Fitness claimed Mr. Stone owed was $109.00.

59.   Mr. Stone did not visit a Knuckle Up Fitness gym location in either November 2020 or December 2020.

60.   Mr. Stone contacted Knuckle Up Fitness to ensure the gym membership was canceled on December 10, 2020.

61.   Knuckle Up Fitness claimed there was a 30-day cancellation window, when no enforceable contract existed allowing for this 30-day cancellation window.

62.   Knuckle Up Fitness claimed Mr. Stone had to pay all past-due amounts before cancellation could be promised.

63.  In short, Mr. Stone could not cancel his account until the amounts Mr. Stone disputed as due were paid, and if they were not then Knuckle Up Fitness would continue to bill Mr. Stone for future amounts.

64.  ABC Financial Services Inc sent Mr. Stone a collection letter dated January 2, 2021, on behalf of Knuckle Up Fitness, claiming Mr. Stone's account was past due and in default (the "ABC Collection Letter").

65.  The ABC Collection Letter claimed Mr. Stone owed $218.00.

66.  The $218.00 amount the ABC Collection Letter claimed Mr. Stone owed would equal the November 2020 and December 2020 dues of $109.00 each month Knuckle Up Fitness alleged Mr. Stone owed.

67.  The ABC Collection Letter claimed that Mr. Stone's account had a "Cancel date" of "1/11/21".

68.  The ABC Collection Letter identified no Late/Service Fees or Cancellation Fee being owed, but instead identified a "Total Due To Cancel" of "$218.00".

69.  The $218.00 sought in the ABC Collection Letter is not permitted by law or contract.

70.  The ABC Collection Letter claimed the debt was owed regarding a membership with KNUCKLEUP FITNESS ALPHARETTA 2.

71.   Upon information and belief, one of the Knuckle Up Fitness entities hired Defendant First Credit Services Inc to collect the alleged debt on behalf of Knuckle Up Fitness.

72.   Defendant First Credit Services Inc sent Mr. Stone a collection letter dated May 3, 2021, seeking to collect an alleged debt in the amount of $884.50 allegedly owed to an original creditor identified as "FIGHT FOR FITNESS LLC, ALPHARETTA 2" (the "First Credit Collection Letter").

73.   This $884.50 amount sought by Defendant First Credit Services Inc is not correct.

74.   The $884.50 amount in the First Credit Collection Letter is more than the $218.00 sought in the ABC Collection Letter.

75.   Mr. Stone never had a contract with Fight For Fitness LLC.

76.   The only gym membership Mr. Stone had was with Fight For Fitness North LLC, and that agreement is unenforceable as a matter of Georgia law.

77.   Mr. Stone does not owe $884.50 to Defendant First Credit Services Inc.

78.   Mr. Stone does not owe $884.50 to ABC Financial Services Inc, or its successor in interest, to ABC Fitness Solutions LLC.

79.   Mr. Stone does not owe $884.50 to Fight For Fitness LLC.

80.   Mr. Stone does not owe $884.50 to Fight For Fitness North LLC.

81.    The $884.50 Defendant First Credit Services Inc sought to collect from Mr.

Stone is not permitted by law or by contract.

82.    Mr. Stone does not owe $885 to Knuckle Up Fitness.

83.    Defendant First Credit Services Inc's actions caused Mr. Stone to suffer

stress, anxiety, frustration, fear, and anger in the form of emotional distress.

84.    Mr. Stone's legal counsel sent Defendant First Credit Services Inc a pre-suit

ante-litem letter pursuant to Georgia's Fair Business Practices Act, O.C.G.A.

§§ 10-1-390 *et seq*., on April 25, 2022.

85.    Mr. Stone's legal counsel also sent Fight For Fitness LLC, Fight For Fitness

North LLC, ABC Financial Services Inc, and ABC Fitness Solutions LLC a

pre-suit ante-litem letters pursuant to Georgia's Fair Business Practices Act,

O.C.G.A. §§ 10-1-390 *et seq*., on April 25, 2022.

86.    Upon information and belief, Defendant First Credit Services Inc is in

competition with other debt collection companies.

87.    The actions of Defendant First Credit Services Inc in seeking to collect debts

not owed by consumers, such as Mr. Stone, on behalf of gym clients, or

other clients, such as Fight For Fitness LLC and Fight For Fitness North

LLC, impact the consumer marketplace for the provision of health spa

services to Georgia consumers, as well as the collection of health spa-related

consumer debts from Georgia consumers.

88.  Defendant First Credit Services Inc is subject to the provisions of Georgia's

Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.*

89.  Upon information and belief, Fight For Fitness LLC and Fight For Fitness

North LLC are in competition with other gyms in the State of Georgia,

specifically within the Atlanta metro area, for the provision of gym and

fitness-related solutions to Georgia consumers.

90.  In this case, both Fight For Fitness LLC and Fight For Fitness North LLC

sought to collect the same alleged debt, based on the same unenforceable

contract, and each sought to collect amounts from Mr. Stone that he did not

owe to either entity.

91.  The actions of Fight For Fitness LLC and Fight For Fitness North LLC in

illegally and intentionally seeking to contract around Georgia's consumer

protection laws related to gyms, seeking to collect debts not owed by

Georgia consumers, seeking to lock Georgia consumers, such as Mr. Stone,

into never-ending, open-ended contracts in violation of Georgia law, and

then sending those illegal and incorrect debts out to collection agencies,

impact the consumer marketplace for the provision of health spa services to

Georgia consumers, as well as the collection of health spa-related consumer debts from Georgia consumers.

92.   Fight For Fitness LLC and Fight For Fitness North LLC are subject to the provisions of Georgia's Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.*

93.   Georgia's Fair Business Practices Act is intended to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state" and is intended to be "liberally construed and applied to promote its underlying purposes and policies."  O.C.G.A. § 10-1-391(a).

94.   Georgia's Fair Business Practices Act imposes a duty on all businesses and individuals to refrain from engaging in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."  O.C.G.A. § 10-1-393(a).

95.   Plaintiff's injuries caused by Defendant First Credit Services Inc's violations of the FDCPA are particular and concrete in that they are legally cognizable injuries through the FDCPA, they have invaded Plaintiff's legal rights, invaded his right to be free from attempts to collect debts he does not owe, invaded his right to be given accurate information about how much of a debt

he does owe, invaded his right to be treated fairly and with conscious regard, and have resulted in Mr. Stone suffering stress and anxiety, emotional distress, as well as valuable lost time and resources.

96.   Defendant First Credit Services Inc  also furnished information regarding Mr. Stone's alleged debt to Knuckle Up Fitness to Trans Union, LLC ("Trans Union"), which is a consumer reporting agency.

97.   Specifically, Defendant First Credit Services Inc  furnished information to Trans Union that Mr. Stone owed a past due and delinquent debt in the amount of $885 to Knuckle Up Fitness.

98.   The information that Defendant First Credit Services Inc  furnished to Trans Union regarding Mr. Stone's alleged debt to Knuckle Up Fitness was inaccurate and derogatory.

99.   In an effort to correct the inaccurate and derogatory information that Defendant First Credit Services Inc  furnished to Trans Union regarding the alleged debt, Mr. Stone exercised his rights under the Fair Credit Reporting Act, specifically 15 U.S.C. §§ 1681i(a) and 1681s-2(b), by disputing that information with Trans Union.

100.   On or about April 7, 2022, Mr. Stone sent a dispute letter (the "Dispute") to Trans Union in which he provided proof of his identity, specified the alleged

debt as being inaccurately reported on his Trans Union credit report, provided a copy of his contract with Knuckle Up Fitness, explained that the amount of the alleged debt reported by First Credit Services Inc  was far in excess of the amount actually claimed by Knuckle Up Fitness and explained, in detail, why he was not obligated to pay any portion of the alleged debt.

101.   Under 15 U.S.C. § 1681i(a), Trans Union was obligated to provide notice of the Dispute to First Credit Services Inc , which it did.

102.   Upon receipt of notice of the Dispute from Trans Union, First Credit Services Inc  was obligated conduct a reasonable reinvestigation of the Dispute in compliance with 15 U.S.C. § 1681s-2(b), but failed to do so by *inter alia*, (i) failing to consider the document that Mr. Stone provided with the Dispute, (ii) failing to determine whether the amount owed by Mr. Stone on the alleged debt was accurate, (iii) failing to investigate and determine whether Mr. Stone had been relieved of his obligations on his contract with Knuckle Up Fitness as a result of Knuckle Up Fitness ceasing to operate during the COVID 19 pandemic and failing to provide an alternative location and (iv) whether Mr. Stone's contract with Knuckle Up Fitness was void for violating O.C.G.A. § 10-1-393.2(b) because it was ostensibly for a term in excess of 36 months.

103.   Following First Credit Services Inc's negligent and/or willful failure to
conduct a reasonable reinvestigation of the Dispute, First Credit Services Inc
informed Trans Union that the information it had furnished to Trans Union
regarding the alleged debt was accurate.

104.   As a result, inaccurate and derogatory information remained on Mr. Stone's
Trans Union consumer report.  Creditors and potential creditors of Mr. Stone
obtained consumer reports on Mr. Stone containing that inaccurate and
derogatory information.

105.   As a proximate result of Defendant First Credit Services Inc failure to
conduct a reasonable reinvestigation of Mr. Stone's Dispute, Mr. Stone has
suffered actual damages, including but not limited to loss of credit
opportunities and emotional distress, including anxiety and fear stemming
from, *inter alia*, his concerns that the inaccurate and derogatory information
on his Trans Union credit report will prevent or negatively affect his ability
to obtain credit in the future.

CAUSES OF ACTION

**Count 1**
*Violations of the Fair Debt Collection Practices Act*

106.  Defendant First Credit Services Inc's efforts to collect an incorrect amount from Mr. Stone on the alleged debt violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

107.  Defendant First Credit Services Inc's efforts to collect an amount from Mr. Stone not permitted by law or by contract violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

108.  Defendant First Credit Services Inc's communication of an incorrect amount for the alleged debt to Mr. Stone violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

109.  Defendant First Credit Services Inc's communication of an incorrect amount for the alleged debt to Transunion for placement on Mr. Stone's Transunion credit report violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

110.  Defendant First Credit Services Inc's efforts to collect a debt from Mr. Stone that he does not owe violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

111.  Defendant First Credit Services Inc's false, misleading, or deceptive statements as to how much Mr. Stone owes on the alleged debt violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

112.  Defendant First Credit Services Inc's use of unfair or unconscionable means in its attempt to collect the alleged debt—namely, by seeking to collect a debt that Mr. Stone does not owe, that is not permitted by law or contract, and for an incorrect amount—violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

113.  As a direct result Defendant First Credit Services Inc's actions in violation of the FDCPA, Mr. Stone suffered stress, anxiety, and emotional distress— otherwise known as garden-variety emotional distress—and suffered lost resources and valuable time in dealing with these collection efforts.

114.  Further, Defendant First Credit Services Inc's violations of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, make it liable to Mr. Stone for not just the actual damages identified above, but also for statutory damages of up to the maximum of $1,000 for each Defendant, plus reasonable court costs and attorneys' fees in accordance with the FDCPA, 15 U.S.C. § 1692k(a)(2)-(3).

**Count 2**

*Violations by Defendants of Georgia's Fair Business Practices Act*

115.   Defendant First Credit Services Inc's efforts to collect improper and illegal amount from Mr. Stone, misrepresentations as to how much Mr. Stone owes on the alleged debt, reporting incorrect and inaccurate information to Mr. Stone's Transunion credit report, and its false, misleading, or deceptive representations to Mr. Stone and to Transunion as to the amount, character, and nature of the alleged debt, are unfair or deceptive acts or practices in the conduct of consumer transactions.

116.   The efforts of Fight For Fitness LLC and Fight For Fitness North LLC, through their agents, including ABC Financial Services Inc and ABC Fitness Solutions LLC, to collect improper and illegal amounts from Mr. Stone, misrepresentations as to how much Mr. Stone owes on the alleged debt, reporting incorrect and inaccurate information to Mr. Stone's Transunion credit report, and their false, misleading, or deceptive representations to Mr. Stone and to Transunion as to the amount, character, and nature of the alleged debt, are unfair or deceptive acts or practices in the conduct of consumer transactions.

117.   The unauthorized charges for services not provided, on an unenforceable contract, that was unliterally breached by Knuckle Up Fitness, that were issued by Fight For Fitness LLC, Fight For Fitness North LLC, in the amount of $436.00 are unfair or deceptive acts or practices in the conduct of consumer transactions.

118.   Fight For Fitness LLC and Fight For Fitness North LLC's efforts to avoid responsibility for complying with Georgia's consumer protection laws relating to gyms, namely O.C.G.A. § 10-1-393.2, violate Georgia's FBPA, O.C.G.A. §§ 10-1-390 *et seq.*

119.   Upon information and belief, the actions of Fight For Fitness LLC, Fight For Fitness North LLC, and Defendant First Credit Services Inc, as described above, were done intentionally in order to try and mislead, deceive, harass, oppress, intimidate, or abuse Plaintiff into paying the alleged debt—in short, those actions and representations were made with the intent to cause Plaintiff to rely upon them so that he would feel forced to pay an incorrect amount of a debt he did not owe in order to make the harassment, oppression, and abuse stop.

120.   Plaintiff relied upon the representations of Fight For Fitness LLC, Fight For Fitness North LLC, and Defendant First Credit Services Inc as to the amount

of the Alleged Debt, the character and nature of the alleged debt, and
whether the only way to end the repeated and continuous collection efforts
was to pay the alleged debt even if he did not owe it.

121.   As a result of Fight For Fitness LLC, Fight For Fitness North LLC, and First
Credit Services Inc's unfair and deceptive acts or practices in the conduct of
consumer transactions, Plaintiff suffered stress, anxiety, and emotional
distress—otherwise known as garden-variety emotional distress—plus
unauthorized charges for services not rendered, in amount to be shown with
more particularity at a later date, but not less than $436.00.

122.   Fight For Fitness LLC, Fight For Fitness North LLC, and First Credit
Services Inc each compete within their respective consumer marketplaces
with other companies who seek to engage in consumer transactions with
Georgia residents, and these companies' actions in disregard to Georgia's
FBPA, O.C.G.A. §§ 10-1-390 *et seq.*, impact the consumer marketplace by
creating an unfair competitive disadvantage for those companies who do
comply with Georgia's FBPA, O.C.G.A. §§ 10-1-390 *et seq.*

123.   Upon information and belief, Fight For Fitness LLC, Fight For Fitness North
LLC, and First Credit Services Inc have each practiced the same disregard
for consumer rights visited upon Plaintiff by their acts complained of in this

case with other consumers, and the consumer transactions that compose Plaintiff's claims are therefore not private transactions, but instead impact the entirety of the consumer marketplace.

124. Defendant First Credit Services Inc's unfair and deceptive acts or practices in the conduct of consumer transactions violate Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* (the "FBPA").

125. Fight For Fitness LLC and Fight For Fitness North LLC's unfair and deceptive acts or practices in the conduct of consumer transactions violate Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* (the "FBPA").

126. Plaintiff served a pre-suit notice required by Georgia's FBPA pursuant to O.C.G.A. § 10-1-399 on Fight For Fitness LLC, Fight For Fitness North LLC, ABC Financial Services Inc, ABC Fitness Solutions LLC, and Defendant First Credit Services Inc, on or about April 25, 2022, which was more than thirty (30) days from the filing of this Amended Complaint.

127. Plaintiff's claims against ABC Fitness Solutions LLC, and its predecessor ABC Financial Services Inc, were resolved prior to the filing of this amended complaint.

128. Each Defendant's violations of the FBPA makes it liable to Plaintiff for the actual damages detailed above to be shown with more particularity at a later date.  O.C.G.A. § 10-1-399(a).

129. Each Defendant's violation of the FBPA makes it liable to Plaintiff for "reasonable attorneys' fees and expenses of litigation incurred," "irrespective of the amount in controversy."  O.C.G.A. § 10-1-399(d).

130. Each Defendant's intentional acts in violation of Georgia's FBPA also make it liable to Plaintiff for treble damages.  O.C.G.A. § 10-1-399(c).

***131.*** Plaintiff further seeks to enjoin each Defendant from continuing to contact him regarding this or any alleged debt pursuant to O.C.G.A. § 10-1-399(a).

### Count 3
*Punitive Damages Against Defendants Under Georgia's FBPA*

132. Plaintiff has a statutorily created right to "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(a) for intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*

133. Defendants' intentional acts in violation of Georgia's FBPA also make them liable for "exemplary damages," sometimes also called punitive damages,

pursuant to O.C.G.A. § 10-1-399(a), in an amount to be determined by the enlightened conscious of a jury.

### *Count 4*
*Contract claims against Defendant Travelers Casualty and Surety Company of America based on the Surety Bond for the actions of Defendant Jefferson Capital Systems LLC*

134.   Defendant Travelers Casualty and Surety Company of America is a surety for Defendant First Credit Services Inc pursuant to a surety bond, Bond Number 7752151205 MN (attached hereto as **Exhibit A**).

135.   The Bond creates a right of action on the bond for any third party who has been harmed by the actions of the principal, Defendant First Credit Services Inc, in violation of the principal's "legal obligations arising out of its conduct as a collection agency." **Exhibit A**.

136.   The Bond is not limited in geographic scope, whether by the geographic region in which the conduct occurred, the geographic region targeted by the conduct, or the geographic region of the person damaged by the actions of the principal. **Exhibit A**.

137.   First Credit Services Inc, as a collection agency, is obligated to comply with the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA").

138.   First Credit Services Inc, as a collection agency, is obligated to comply with Georgia's Fair Business Practices Act, O.C.G.A.  §§ 10-1-390 *et seq.* ("Georgia's FBPA").

139.   Plaintiff claims that Defendant First Credit Services Inc has not complied with either the FDCPA or Georgia's FBPA.

Plaintiff seeks recovery from Defendant TRAVELERS any and all losses he suffered as a result of Defendant First Credit Services Inc's conduct up to the total of the bond in the amount of $50,000.00.

### Count 5
*Violation of 15 U.S.C. § 1681s-2(b) by First Credit Services Inc.*

140.   First Credit Services Inc negligently, or in the alternative recklessly and/or willfully, violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable reinvestigation of the Dispute as alleged in Paragraph 102 above.

141.   As a proximate result thereof, Mr. Stone has suffered and is entitled to recover actual damages as alleged in Paragraph 105 above in an amount to be proven at trial as allowed by 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1).

142. As a result of First Credit Services Inc reckless and willful violation of 15 U.S.C. § 1681s-2(b), Mr. Stone is entitled to recover statutory damages in the amount of $1,000 as allowed by 15 U.S.C. § 1681n(a)(1)(A).

143. As a result of First Credit Services Inc reckless and willful violations of 15 U.S.C. § 1681s-2(b), Mr. Stone is also entitled to recover punitive damages as allowed by 15 U.S.C. § 1681n(a)(2).

144. Mr. Stone is also entitled to recover his costs or this action and reasonable attorneys fees as allowed by 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2).

## JURY DEMAND

145. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays that this Court:

(1) Find all Defendant First Credit Services Inc liable for violations of the Fair Debt Collection Practices Act for the reasons stated in the Complaint above;

(2) Award Plaintiff the full $1,000 statutory damages for Defendant First Credit Services Inc's FDCPA violations;

(3) Award Plaintiff actual damages against Defendant First Credit Services Inc in an amount to be shown with more particularity at a later date for said Defendant's FDCPA violations;

(4)     Find Defendant First Credit Services Inc liable for violating 15 U.S.C. § 1681s-2(b) as alleged above;

(5)     Find Defendant First Credit Services Inc liable for actual damages to be shown with more particularity at a later date as allowed by 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

(6)     Find Defendant First Credit Services Inc liable for willfully violating 15 U.S.C. § 1681s-2(b);

(7)     Award Plaintiff statutory damages in the amount of $1,000 as allowed by 15 U.S.C. § 1681n(a)(1)(A) for Defendant First Credit Services Inc's willful violations of 15 U.S.C. § 1681s-2(b);

(8)     Find Defendants liable for actual damages in an amount to be shown with more particularity at a later date for their violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*;

(9)     Find Defendants liable for treble damages for their intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(c);

(10)    Award Plaintiff equitable relief in the form of an injunction against Defendants contacting Plaintiff or seeking to collect the Alleged Debt, or any other debt, from Plaintiff in the future pursuant to Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(a).

(11)    Find Defendants liable for punitive damages for their intentional violations of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(a);

(12)    Award Plaintiff reasonable attorney's fees and costs against Defendant First Credit Services Inc in accordance with the FDCPA 15 U.S.C. § 1692k(a)(2)-(3);

(13)    Award Plaintiff reasonable attorneys' fees and costs of this action against Defendant First Credit Services Inc as allowed by 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2);

(14)   Award Plaintiff reasonable attorney's fees and costs in accordance with the Georgia's FBPA, O.C.G.A. § 10-1-399(d), for each Defendants' violations of Georgia's Fair Business Practices Act;

(15)   Find Defendant Travelers Casualty and Surety Company of America liable for any and all damages, attorneys fees, and costs for which Defendant First Credit Services Inc is liable up to the total surety bond amount;

(16)   Award Plaintiff the reasonable costs of this action;

(17)   Award Plaintiff other reasonable expenses of litigation;

(18)   Grant Plaintiff such other and additional relief as the Court deems just and equitable.

Respectfully submitted this 27 April 2022.

/s/ Craig E. Bertschi
Craig E. Bertschi
Georgia Bar No. 055739
678.999.1102
ceb@mcraebertschi.com

**MCRAE BERTSCHI & COLE LLC**
1872 Independence Square, Suite D
Dunwoody, Georgia 30338

*Counsel for Plaintiff*

/s/ John William Nelson
John William Nelson
Georgia Bar No. 920108
john@nelsonchambers.com
*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph. 404.348.4462
Fax. 404.549.6765

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B).  The foregoing AMENDED COMPLAINT was prepared on a computer, using Times New Roman 14-point font.

**DATED:**    27 April 2022

/s/ John William Nelson
John William Nelson
State Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765